NORTHWESTERN STEEL & IRON CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5521.  Promulgated February 10, 1927.

The evidence fails to show that the petitioner acquired good will for stock for invested capital purposes.

*Stanley B. Houck, Esq.,* and *W. Y. Smiley, Esq.,* for the petitioner.
*F. O. Graves, Esq.,* for the respondent.

This is a proceeding for the redetermination of a deficiency in income and profits taxes for the fiscal year ended October 31, 1920, in the amount of $1,160.26. The deficiency arises on account of the action of the respondent in disallowing in invested capital any value attributable to good will alleged to have been acquired by the petitioner for stock at the time of its organization.

#### FINDINGS OF FACT.

The petitioner was incorporated under the laws of Minnesota in 1910, under the name of the Gas Traction Foundry Co. Its principal office is in Minneapolis. The name of the petitioner was changed in 1920 to the Northwestern Steel & Iron Corporation. At the time of the organization of the corporation it issued its capital stock of the par value of $75,000 as follows:

| | |
|---|---|
| D. C. Gamm | $25,000 |
| D. A. Potter | 25,000 |
| Gas Traction Co | 24,900 |
| Glover | 100 |
| | 75,000 |

Good will was set up on the books of the petitioner at $75,000.

Gamm and Potter had been employed by the Stickney Foundry Co. for a period of approximately eleven years prior to the organization of the Gas Traction Foundry Co. The Gas Traction Co. was a manufacturing corporation with which Glover was associated and which was a customer of the Stickney Foundry Co. Prior to the organization of the petitioner an agreement was entered into between the Gas Traction Co. and Gamm and Potter, as follows:

THIS AGREEMENT, Made this 4th day of April, 1910, by and between GAS TRACTION COMPANY, a corporation of Minneapolis, Minn., party of the first part, and C. C. GAMM and D. A. POTTER of St. Paul, Minn., parties of the second part,

WITNESSETH:

That, whereas, it is the desire of the party of the first part to have erected adjacent to their factory in Minneapolis, Minn., a foundry at which the castings needed by the party of the first part in its business of constructing Gas Traction engines may be manufactured more conveniently for the party of the first part, and, so far as possible, under the supervision of the party of the first part, thus effecting a saving in the cost of such castings and of their transportation and delay in their delivery; and,

Whereas, the parties of the second part have been long in the business of operating a foundry in St. Paul and have built up a good reputation and a valuable good will, as expert foundry men; and said parties have heretofore manufactured for the party of the first part a large part of the castings used by it in its business during the years 1909 and 1910, to the entire satisfaction of the party of the first part; and,

Whereas, it is the desire of the parties of the second part to secure the means by which they can enter into a business as foundry men in which they shall have a controlling interest so that their labor and skill in the operation of such business shall result primarily to their own advancement; and all of the parties hereto desire that a foundry business shall be established and operated in Minneapolis in such a way as to advance, so far as possible, the interests of all of the parties hereto; and so that it can be operated to the mutual advantage of all of the parties;

Now, In consideration of the premises, the said parties do hereby agree as follows, to-wit:

1. The parties hereto shall, as soon as possible, cause to be organized a corporation to be called Gas Traction Foundry Company, under the laws of the State of Minnesota, and with its principal place of business in Minneapolis, with its articles of incorporation so prepared and drawn as to create it a purely manufacturing corporation. Said corporation shall have an authorized capital stock not to exceed One Hundred and Fifty Thousand Dollars ($150,000). A majority of the first board of directors of the corporation shall be named by the parties of the second part; and thereafter the election shall be governed by the vote of a majority of the stock.

2. The party of the first part shall, as soon as possible after the signing of this agreement, cause to be erected in the City of Minneapolis, Minn., at some location to be agreed upon by the parties hereto, convenient to the factory of the party of the first part, a foundry the plans for which shall be approved by the parties of the second part, sufficient in size and capacity, to make all of the castings which may be required by the party of the first part in its business for many years to come, and to furnish facilities also for doing foundry work for other customers. The party of the first part also

agrees to equip said foundry with all necessary tools, machinery, fixtures and appliances for carrying on properly the foundry business, which said foundry building, tools, fixtures and appliances, with the real estate upon which the same shall be located, shall not cost to exceed the sum of Twenty-five Thousand Dollars ($25,000). The party of the first part may, if it so desires, erect said foundry on a part of the real estate now owned by it in the City of Minneapolis, Minn.; or such real estate as it may hereafter have purchased for the uses of its business; provided, that, if said real estate is so furnished by the party of the first part, it shall be furnished at the fair valuation thereof, not to be less than One Thousand Dollars ($1,000) per lot of fifty (50) feet frontage on Fourth Street Southeast in Minneapolis, and not less than the price which the party of the first part shall be obliged to pay for any real estate hereafter acquired which may be used for the purpose.

3. The party of the first part further agrees that it will after said foundry shall have been erected and equipped as aforesaid, convey to the said Gas Traction Foundry Company the said foundry, foundry site, tools, machinery, fixtures and appliances, and assign it all contracts which it may be able to secure for foundry work prior to such conveyance, in consideration of the sum of Fifty-five Thousand Dollars ($55,000), to be paid as follows, viz., Twenty-five Thousand Dollars ($25,000) in the paid up common capital stock of said corporation at par, and Thirty Thousand Dollars ($30,000) in the note of the grantee payable on or before ten (10) years after date with interest payable semi-annually at the rate of six (6) per cent per annum. Said note shall be secured by a first mortgage on the said foundry, foundry site, machinery, tools and fixtures. Said note shall provide that it may be paid by the mortgagee in multiples of Five Hundred Dollars ($500), said payments to be made whenever the mortgagee or his assigns shall so elect. Of the remaining capital stock, Twenty-five Thousand Dollars ($25,000) thereof shall be issued as paid up capital stock to the said C. C. Gamm and Twenty-five thousand Dollars ($25,000) thereof as paid up capital stock to the said D. A. Potter. If the incorporators hereto shall decide to issue to the parties hereto at the time of incorporation any more than Seventy-five Thousand Dollars ($75,000) of stock, then one-third of all the stock so issued shall be issued to each of the three parties hereto. The said stock issued as aforesaid to the parties of the second part shall be received by them in full consideration for the good will which they may bring to the business of the corporation, and in consideration of their agreement which they hereby make, to devote their entire time and attention to the business of said foundry, to manage the same to the best of their ability, for a salary of Eighteen Hundred Dollars ($1,800) per year each and for no other compensation except the dividends which they shall receive from time to time upon their said capital stock, for the term of ten years after the commencement of the life of the corporation so to be formed.

4. As a further consideration of the agreement of the parties hereto, as herein set forth, the said parties do hereby agree that said corporation when formed, shall enter into a contract with said Gas Traction Company to furnish said Gas Traction Company all of the castings which said company may require for use in its business, at the actual cost price thereof, with five per cent (5%) added for profit; and that it will make for said Gas Traction Company all of its patterns and do all of its pattern work at the actual cost price thereof, with thirty-three and a third per cent (33⅓) added to the cost of productive labor entering into said patterns, to cover over-head charges; and that, while said foundry company shall be fully authorized to do a general contracting business in foundry and pattern work, the preference shall at all times be given to the orders

received from said party of the first part. In the cost of castings shall be included the proportionate amount of labor and also of all the heat, light and power used in the entire foundry. Settlements shall be made on the 10th of each month.

5. In consideration of this agreement the parties of the second part do hereby agree that they will continue to furnish their services actively in said business as hereinabove set forth, during the term of ten (10) years, and such further extended term as shall be mutually agreed upon thereafter. And it is further agreed by the parties of the second part for themselves and for their executors, administrators and assigns, that if they, or either of them shall desire, for any reason, to sell or in any wise dispose of their stock in said corporation, they shall first offer the same for purchase to the said Gas Traction Company and said Company shall have the right to purchase the same at the fair value thereof. If said parties can not agree upon such value, then such value shall be fixed by three appraisers, one of whom shall be named by the party of the first part, one by the parties of the second part, and the third shall be chosen by the parties so named.

6. It is further agreed that the parties of the second part shall assume actively the business of Gas Traction Foundry Company on July 1st, 1910, and that the party of the first part shall use all reasonable efforts to have said foundry building built and equipped by that date. The conveyance of said foundry site and its equipment and the issuance of stock therefor shall be made as of July 1st, and the entire transfer shall take place as of that date.

It is further agreed that on said July 1st, 1920, or as soon thereafter as the parties can arrange to meet for that purpose, the party of the first part will deliver possession of the foundry and foundry site and will turn over to the foundry company all orders which it can secure for foundry work prior to that date; and will pay into its treasury, as soon thereafter as may be needed, as working capital, an amount of money equal to the difference between Thirty Thousand Dollars ($30,000) and the cost of the foundry, foundry site and equipment.

The petitioner was organized in accordance with the above agreement under the name of the Gas Traction Foundry Co. The Gas Traction Co., in accordance with the contract, erected and equipped a foundry, complete and ready for operation, which it turned over to the petitioner in consideration of $55,000, of which $25,000 was payable and was paid in common stock at par, and $30,000 was represented by a note payable on or before ten years after date, with interest payable semi-annually at the rate of 6 per cent.

The stock was issued to Gamm and Potter in the amounts set out above in consideration of the benefit or advantage which they might bring to the business of the corporation on account of their personal skill, reputation, their agreement to devote their entire time and attention to the business and to manage the same for a salary of $1,800 a year each.

After the organization of the petitioner corporation, it entered into a contract with the Gas Traction Co. whereby it was agreed that the petitioner would furnish to the Gas Traction Co. all of the castings which that company would require for use in its business at the actual cost price thereof with 5 per cent added for profit,

and to make for the Gas Traction Co. all of its patterns and to do all of its pattern work at the actual cost price thereof with 33⅓ per cent added to the cost of productive labor entering into said patterns to cover overhead charges.

The petitioner was permitted by these contracts with the Gas Traction Co. to do a general contracting business in foundry and pattern work, but was required to give preference at all times to orders received from the Gas Traction Co.

The following is a statement of the earnings, interest, and borrowed capital from the time of the organization of the petitioner corporation until October 31, 1915:

|  | Earnings. | Interest. | Total. | Borrowed capital. |
|---|---|---|---|---|
| To Dec. 1, 1911 | $6,927.97 | $1,800.00 | $8,727.97 | $30,000 |
| Dec. 1, 1911, to Nov. 30, 1912 | 16,277.59 | 2,185.95 | 18,463.54 | 30,000 |
| Dec. 1, 1912, to Oct. 31, 1913 | 10,583.97 | 1,726.50 | 12,310.47 | 30,000 |
| Nov. 1, 1913, to Oct 31, 1914 | 297.15 | 1,215.99 | 1,513.14 | 18,700 |
| Nov. 1, 1914, to Oct. 31, 1915 | 18,566.14 | 1,044.46 | 19,610.60 | |
| Totals | 52,652.82 | 7,972.90 | 60,625.72 | 108,700 |
| Average, 5 years | 10,530.56 | 1,594.58 | 12,125.14 | 21,740 |

In 1915 the petitioner repurchased its capital stock of the par value of $25,000 for $5,000 in cash.

OPINION.

TRAMMELL: If, in exchange for its capital stock in 1910, the petitioner acquired good will of a definite cash value, then there should be included in the computation of its invested capital such good will at a value not to exceed $20,300, representing 25 per cent of the par value of the capital stock outstanding on March 3, 1917.

If the petitioner acquired any good will for stock at the time of its organization, it could only have acquired it from Gamm and Potter. It is not contended that it acquired any good will from any other source. Gamm and Potter had been employed by the Stickney Foundry Co. for several years. They decided to leave the company and establish a business of their own. Accordingly, they entered into the contract with the Gas Traction Foundry Co. set forth in the findings of fact, and a new corporation was organized which issued stock to Gamm and Potter. The only thing transferred by Gamm and Potter to the corporation was, in fact, their services. No going concern or established business was conveyed to the petitioner. The knowledge, experience, skill and acquaintanceship of Gamm and Potter, which the corporation received the benefit of by virtue of their connection with the company, was undoubtedly

of great benefit to the corporation, but we have held that this does not constitute good will. In the *Appeal of Providence Mill Supply Co.*, 2 B. T. A. 791, we said:

Ability, skill, experience, acquaintanceship, or other personal characteristics or qualifications do not constitute good will as an item of property; nor do they exist in such form that they could be the subject of transfer.

We are, therefore, of the opinion that the petitioner did not acquire for stock at the time of its organization good will of any value.

*Judgment will be entered on 15 days' notice, under Rule 50.*